UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-40017-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER ADOPTING |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | IN PART AND REJECTING REPORT |
| EMMANUEL WILLIAM NYUON, | ) | AND RECOMMENDATION IN PART |
| | ) | |
| Defendant. | ) | |

Defendant, Emmanuel William Nyuon, was indicted on two counts related to sex trafficking offenses. Docket 61. Nyuon moves to suppress all evidence obtained as a result of a warrantless search of his cell phone conducted incident to arrest. Docket 102. The motion was referred to the magistrate judge, who issued a report and recommendation recommending denial of the motion. Docket 124. Nyuon objects to that order. Docket 159. The government did not respond. For the reasons set forth below, Nyuon's objection to one of the magistrate judge's factual findings is sustained, all other objections are overruled, and the remainder of the magistrate judge's report and recommendation is adopted in its entirety. Accordingly, Nyuon's motion to suppress is denied.

## BACKGROUND

On January 25, 2012, law enforcement in Sioux Falls, South Dakota, held an undercover sting operation regarding an underage prostitute. Nyuon was seen driving the car that dropped the juvenile off at a hotel where she met up

with an undercover officer. After the juvenile agreed to exchange money for a sex act, law enforcement arrested her for prostitution. At the time of arrest, law enforcement seized two cell phones from the juvenile. Meanwhile, other law enforcement officers were conducting surveillance outside of the hotel. Detective Hector Soto was responsible for following the car that dropped the juvenile off.

Following the juvenile's arrest for prostitution, officers were instructed to detain the occupants of the car. Soto made contact with Nyuon, who was driving, and another individual in the vehicle. Soto removed Nyuon from the vehicle, handcuffed him, and detained him. Soto told Nyuon he was being detained while law enforcement conducted an investigation for prostitution-related activities. During Soto's encounter with Nyuon, Soto saw a marijuana pipe and what appeared to be marijuana residue in a purse on the front seat of the car. Soto then informed Nyuon that his car would be towed, and Nyuon asked Soto to retrieve his Blackberry cell phone and some money from the car.

While retrieving Nyuon's Blackberry from his car, Soto saw a text message in plain view on the phone that said something similar to, "do you have condoms?" Soto testified that he did not activate the phone, that he does not know how to use a Blackberry, and that he did not do anything to display the message. Nyuon was taken to the law enforcement center for questioning. Upon arrival at the law enforcement center, Soto told two other law enforcement officers involved in the sting, Agent Craig Scherer and Officer Cullen McClure, about the text message he saw. McClure looked at the contents of the

Blackberry for five or six minutes; specifically, looking at the text messages and recent calls. McClure stated that he knew cell phones were commonly used for pimping so he was searching the phone incident to arrest for evidence related to Nyuon's prostitution-related offense. McClure also said he was worried the evidence would be erased or lost if he did not search the phone. Later, Scherer downloaded the contents of Nyuon's Blackberry and extracted specific types of data. Nyuon was booked on charges of promoting prostitution, pimping, possession of marijuana, possession of drug paraphernalia, and for an outstanding traffic warrant.

On January 27, 2012, law enforcement obtained a search warrant to search the two cell phones taken from the juvenile and for Nyuon's Blackberry. The search of one of the juvenile's phones revealed incoming and outgoing text messages exchanged with Nyuon's Blackberry from the day of Nyuon's arrest. Nyuon was indicted on federal charges related to sex trafficking on February 7, 2012. Docket 3. On February 13, 2013, Nyuon moved to suppress the data obtained from his Blackberry on the night of his arrest. Docket 102. The magistrate judge held a hearing on the matter on February 28, 2013. Docket 114. On March 7, 2013, the magistrate judge issued his report and recommendation where he recommended that the motion to suppress be denied. Docket 124. Nyuon filed his objections to the report and recommendation on March 21, 2013. Docket 159. The government did not respond.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), "when a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). De novo review in the context of reviewing a magistrate judge's report and recommendation means a district court only "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (internal quotations and citations omitted). Accordingly, the court will review the disputed portions of the magistrate judge's report and recommendation de novo.

**DISCUSSION**

**I.  Factual Findings**

In the report and recommendation, the magistrate judge stated once that the search warrant for the juvenile's phones and Nyuon's Blackberry was obtained "the next day" after Nyuon's arrest, which would have been January 26, 2012. Docket 124 at 6. Nyuon objects to this statement because he claims that the arrest warrant was not actually signed until January 27, 2012. In footnote one of the report and recommendation, the magistrate judge states that the search warrant and supporting affidavit was dated January 27, 2012. Docket 124 at 1 n.1. Later, the magistrate judge states that law enforcement obtained a warrant to search the juvenile's two phones and Nyuon's Blackberry

4

on January 27, 2012. Docket 124 at 12. Thus, the magistrate judge's reference to law enforcement obtaining a search warrant "the next day" is incorrect, and Nyuon's objection to this factual finding is sustained.

Nyuon objects to inclusion of the fact that Soto stated he saw a text message on Nyuon's Blackberry when he was retrieving it from Nyuon's car. Nyuon argues that Soto could not have seen a text displayed on Nyuon's Blackberry screen because in a matter of seconds "whatever a cell phone is displaying turns off and the display window goes black." Docket 159 at 2-3. There is no support for this conclusion in the record. Soto testified that he does not know how to work a smart phone and he did not manipulate the phone to retrieve a text message, but that he saw a text message visible on the screen. Nyuon did not establish any evidence for the court to conclude that Soto was not being honest or that he did not see the text message. Because there is no evidence to dispute Soto's version of events, Nyuon's objection is overruled.

Nyuon also objects to the inclusion of McClure's statement that he wanted to search the contents of the Blackberry prior to getting a search warrant so he could preserve evidence. Nyuon claims that this statement "rings hollow." Docket 159 at 3. McClure stated that he knew that cell phones are used for pimping, and he was subjectively concerned that the evidence on the Blackberry would be destroyed if he did not access it soon after arrest. Nyuon failed to establish any evidence that McClure was not telling the truth. Accordingly, Nyuon's objection is overruled.

## II. Legal Conclusions

Nyuon argues that the magistrate judge's report and recommendation should be overruled and his motion to suppress should be granted because neither the search incident to arrest doctrine nor the inevitable discovery doctrine applies to this warrantless search.

### A. Search Incident to Arrest/*Arizona v. Gant*

In every case that addresses the reasonableness of a warrantless search, the court starts with the concept that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id.* "A search incident to arrest may lawfully extend to the arrestee's person and the area within his immediate control." *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010) (quotation and citation omitted).

When a search incident to arrest pertains to the search of automobiles, however, "police may search the passenger compartment of a vehicle incident to arrest only if (1) the arrestee might have access to the vehicle at the time of the search, or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *United States v. Hambrick*, 630 F.3d 742, 746 (8th Cir. 2011) (citing *Gant*, 556 U.S. at 351). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular

place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009) (internal quotations and citations omitted).

It is undisputed that the first prong of the *Gant* test does not apply to this case because Nyuon was handcuffed and did not have access to his vehicle at the time of its seizure. Thus, this court will analyze whether it was reasonable to believe that Nyuon's vehicle contained evidence of the offense of his arrest. Nyuon contends that the second prong of the *Gant* test cannot be met because when Officer Soto viewed Nyuon's cell phone the screen had to be blank, so law enforcement officers could not have held a reasonable belief that the phone contained information related to prostitution. Docket 159 at 5. This conclusion, as noted previously, is not supported by the evidence.

On the evening of January 25, 2012, law enforcement officers were surveilling Nyuon's car as part of an undercover sting involving prostitution of a juvenile. Because Nyuon's car dropped the juvenile off at the hotel where she was eventually arrested for prostitution, law enforcement suspected that the occupants of the car were also involved in the minor's prostitution. This suspicion is why Nyuon was detained. Soto found Nyuon's Blackberry in his car within Nyuon's immediate control. McClure stated that he wanted to look at the contents of the phone because cell phones are commonly used for pimping. Soto testified that a text message discussing condoms was in plain view on the screen when he picked up Nyuon's Blackberry. Based on this evidence, it was reasonable for law enforcement to believe that Nyuon's car and Blackberry

7

contained evidence of the prostitution-related offense for which he was arrested. As such, Nyuon's objection to the magistrate judge's legal conclusion as to prong two of the *Gant* analysis is overruled.

Moreover, even if *Gant* only allowed for the search of Nyuon's car and the seizure of his phone, the search of the Blackberry's contents was reasonable under the search incident to arrest doctrine. While the Eighth Circuit Court of Appeals has yet to address the issue, both the Fourth and Fifth Circuit Courts of Appeals have determined that cell phones or containers may be searched incident to a lawful arrest to preserve additional evidence of an arrestee's crime for use at trial. *See United States v. Finley*, 477 F.3d 250, 260 (5th Cir. 2007) (stating that the scope of the search incident to lawful arrest extends to containers found on the person and officers may "look for evidence of the arrestee's crime on his person in order to preserve it for use at trial."); *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009) (noting that the Fourth Circuit has concluded that law enforcement may retrieve text messages and other cell phone data seized incident to arrest to preserve evidence). Even though the Blackberry was not thoroughly searched until after Nyuon was taken to the law enforcement center, it was still temporally and spatially connected to his arrest such that the search was lawfully conducted incident to arrest. *See Hambrick*, 630 F.3d at 748 ("It is . . . plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention.").

Nyuon claims that the majority of cases cited by the magistrate judge are distinguishable from his case, thus, law enforcement officers did not have a valid basis to search Nyuon's phone at the time of arrest and that they lacked probable cause. Nyuon argues that the case of *United States v. Gomez*, 807 F. Supp. 2d 1134 (S.D. Fla. 2011), is distinguishable from his case because in *Gomez* the police saw a name and number come into plain view on the caller ID and that the search incident to arrest was justified because police already had other evidence relating to the offense of arrest. *Id.* at 1142-47. Here, there was evidence related to prostitution-offenses that came up in plain view on Nyuon's phone while law enforcement had possession of it incident to arrest. And like *Gomez*, law enforcement had evidence that Nyuon was engaging in prostitution-related activity prior to the search because they witnessed his car drop off the juvenile who was arrested for prostitution. Nyuon's argument that *Gomez* is distinguishable on the facts is without merit.

Nyuon also claims that *Hambrick* is not applicable because that case involved a valid station house search, rather than a lawful search incident to arrest. *Hambrick*, 630 F.3d at 748. Nyuon similarly asserts that his case is distinguishable from *United States v. Brewer*, 624 F.3d 900 (8th Cir. 2010), because "*Brewer* did hold that search was incident to a lawful arrest, but only because the prerecorded buy money was seized from the defendant's pocket." The magistrate judge, however, did not cite these cases for their similarity in fact to Nyuon's case, but instead cited them to establish how the Eighth Circuit

has interpreted *Gant* or to generally state the law about search incident to arrest. Nyuon's objection is overruled.

## B. Inevitable Discovery Doctrine

The Eighth Circuit has stated that the inevitable discovery exception to the warrant requirement applies if "the government proves 'by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.' " *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (citations omitted). The focus is "not on what officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred." *Id.* (quoting *United States v. Villalba-Alvarado*, 345 F.3d 1007, 1020 (8th Cir. 2003)).

Law enforcement eventually obtained a search warrant and searched the juvenile's two cell phones two days after Nyuon's Blackberry was searched. On one of those phones, law enforcement discovered text messages between Nyuon's Blackberry and the juvenile's cell phone from the day of Nyuon's arrest. The messages found on the juvenile's phone are identical to some of the evidence in dispute in this motion to suppress data from Nyuon's Blackberry. This leads the court to conclude that even if Nyuon's phone would not have been searched the night of his arrest, it is reasonably likely that law enforcement

would have requested and obtained a valid search warrant to search the Blackberry that was already lawfully seized once law enforcement officers lawfully found the text messages on the juvenile's phone. Accordingly, there is a reasonable probability that the evidence would have been discovered anyway due to lawful conduct. *McManaman*, 673 F.3d at 846. This lawful route for finding the text messages amounts to "a substantial, alternative line of investigation." *Id.* The inevitable discovery rule is an additional bar to suppression.

Nyuon alleges that the inevitable discovery doctrine cannot apply in this case because the warrant was based on false information. Nyuon again claims that Soto could not have seen a text message open on the screen, therefore, there was insufficient information to support the issuance of the search warrant. The court has already determined, however, that the evidence suggests that Soto did see a text message in plain view on the screen. Nyuon has failed to allege any other way that the warrant could be based on false information. Nyuon's objection to this legal conclusion is overruled.

## CONCLUSION

Nyuon's objection to the magistrate judge's factual finding that the search warrant was issued "the next day" after Nyuon was arrested is sustained. Any other objections to the magistrate judge's factual findings are overruled. The warrantless search of Nyuon's Blackberry was reasonable under the Fourth Amendment because it was searched incident to his lawful arrest, evidence was

seen in plain view on the Blackberry, and law enforcement had a reasonable belief that they would find evidence of the crime for which Nyuon was arrested on the Blackberry found in Nyuon's vehicle within the area of his immediate control. Additionally, the court finds that suppression is not warranted when the evidence would have inevitably been discovered pursuant to lawful means and through an alternative line of investigation. Nyuon's objections to the magistrate judge's legal conclusions are overruled, and the motion to suppress is denied. Accordingly, it is

ORDERED that Nyuon's objections to the magistrate judge's report and recommendation on the motion to suppress (Docket 124) are granted in part and denied in part. Nyuon's objection to the magistrate judge's factual finding that the search warrant was obtained the day after Nyuon's arrest is sustained. All other objections are overruled, and the factual findings and legal conclusions contained in the magistrate judge's report and recommendation are adopted.

IT IS FURTHER ORDERED that Nyuon's motion to suppress (Docket 102) is denied.

Dated March 29, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE